ORDERED in the Southern District of Florida on March 13, 2008.



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In Re:                                   )
                                         ) Case No. 07-10279-BKC-AJC
LAMINATE KINGDOM LLC,                    ) Chapter 7
                                         )
         Debtor.                         )
                                         )
_____  )

ORDER PERMITTING CAROLINA TO PAY
"COSTS OF DEFENSE" UNDER ITS POLICY

This Order relates to Carolina Casualty Insurance Company's ("Carolina") Motion For Relief From The Automatic Stay, To The Extent Applicable, To Allow Reimbursement of Loss under Carolina's Management Liability Policy (the "Policy"), heard at **2:30 P.M. on January 30, 2008**, and the Court Orders as follows:

1. Carolina has sought relief from the automatic stay, *to the extent applicable*, to permit Carolina to reimburse "Costs of Defense" incurred by the Directors and Officers of the Debtor Laminate Kingdom LLC ("Laminate" of the "Debtor") relating to several Claims against the Directors and Officers. In its Motion, Carolina argues that "the proceeds of the

262797.1

Policy...are not property of the Debtor's estate," but that Carolina filed this Motion "out of an abundance of caution." As set forth below, this Court agrees that the Policy is not an asset of the Debtor's estate and, therefore, this Court's approval for Carolina's advancement of Costs of Defense is not necessary. Alternatively, to the extent the Policy is deemed an asset of the estate, the automatic stay imposed by 11 U.S.C. § 362(a) is lifted solely to permit Carolina to reimburse reasonable and necessary Costs of Defense incurred by the Directors and Officers since the commencement of this bankruptcy case in connection with the Laminate Claims described below, after notice and hearing upon application to this Court in accordance with the Court's Local Rules and guidelines.

2. Prior to the commencement of the bankruptcy case, Carolina issued a Management Liability Insurance Policy that provides, under Coverage A, that Carolina "shall pay the Loss of: each and every Director or Officer...arising from any Claim first made against the Directors or Officers...for any Wrongful Act, *except and to the extent that the Insured Entity has indemnified the Directors and Officers*." (Emphasis added.) "Loss" is defined by the Policy to include "Costs of Defense", which is defined to mean "reasonable and necessary fees, costs and expenses" incurred by the Directors and Officers in defense of any Claim. The payment of Loss, including Costs of Defense, reduces the Policy's aggregate $3 million limit of liability.

3. It is undisputed that Laminate has *not* indemnified the Directors and Officers for the Costs of Defense related to the Laminate Claims (defined below) that have been incurred since the commencement of this bankruptcy case.

262797.1

4. By Endorsement, the Policy also contains a "Priority of Payments Endorsement," which provides:

> In the event of Loss rising from any Claim(s) for which payment is due under the provisions of this Policy, then the Insurer shall:
>
> a.  first, pay such non-indemnifiable Loss for which coverage is provided under Coverage A of this Policy; and
>
> b.  then, with respect to whatever remaining amount of the Limit of Liability is available after payment of such non-Indemnifiable Loss, at the written request of the chief executive officer of the Parent Organization, either pay or withhold payment of such other Loss for which coverage is provided under this Policy.

5. After the commencement of this bankruptcy case, the following matters were noticed to Carolina under the Policy: (1) a lawsuit captioned *Kronotex USA, LCC., et al. v. Robert J. Hodges, et al.*, case no. 07-21939, filed in the United States District Court for the Southern District of Florida (the "Lawsuit"), which names the Directors and Officers of Laminate as defendants, Robert J. Hodges, Richard J. Hodges and Robert A. Hodges (the "*Kronotex* Lawsuit"); (2) the Chapter 7 Trustee of Laminate sent a demand letter to the Directors and Officers of Laminate, Robert J. Hodges, Richard J. Hodges and Robert A. Hodges (the "Trustee Demand Letter"); and (3) the Chapter 7 Trustee of Laminate filed a Counterclaim against a Director and Officer of Laminate, Thomas Grafenauer (the "Trustee Counterclaim"). The Kronotex Lawsuit, the Trustee Demand Letter and the Trustee Counterclaim shall be collectively referred to hereinafter as the "Laminate Claims".

### A. The Policies' Proceeds Are Not Property Of Laminate's Bankruptcy Estate

6. In determining a property interest in an insurance policy, courts are guided by the language and scope of the policy at issue. *In re Allied Digital Technologies Corp.*, 306 B.R. 505, 509 (Bankr.D.Del.2004). The outcome of the fact-based analysis usually hinges on who is the named insured under the liability insurance policy because liability policies are held by insureds as protection against claims that may be asserted against them. *See In re Minoco Group of Companies, Ltd.*, 799 F.2d 517, 519 (9th Cir.1986). Two other factors that courts have considered in making this determination are whether "the debtor's estate is worth more with them then [sic] without them," *In re CyberMedica*, 280 B.R. at 17 (quoting *In re Minoco Group*, 799 F.2d at 519), and "whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim."

7. Typically, the proceeds of a directors and officers liability insurance policy are not considered property of a bankruptcy estate. *See, e.g., In re Louisiana World Exhibition*, 832 F.2d 1391, 1460 (5th Cir. 1987) ("the liability proceeds payable to the directors and officers are not part of the bankruptcy estate."); *In re CHS Electronics, Inc.*, 261 B.R. 538, 544 (Bankr. S.D. Fla. 2002) (D&O policy proceeds are not property of the estate, adopting the Fifth Circuit's holding in *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987)). *See also, In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bankr. Del. 2007) ("[T]he proceeds of the Debtor's [D&O] insurance policy are not property of the estate."); *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) ("individual insureds… have a right to use the policies' proceeds to cover their defense and settlement costs

in litigation"); *In re Adelphia Communications Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003) ("[debtor] Adelphia's estate cannot ascribe to hold a property interest in these [D&O] proceeds."); *In re First Central Financial Corp.*, 238 B.R. 9, 13 (Bank. E.D.N.Y. 1999) ("the [D&O] proceeds here in question are not estate property."); *In re Daisy Sys. Sec. Litigation*, 132 B.R. 752, 755 (N.D. Cal. 1991) ("the proceeds of the three DOL policies in this case are not simply assets of Daisy's bankruptcy estate.").

8. However, the foregoing cases are distinguishable from the instant case because in all of the cases cited, the Debtor did not have any interest in the policy proceeds; in none of those cases was there a direct claim by the debtor to the policy proceeds, as is the case here. In this case, the Policy provides coverage for the directors and officers **and** the debtor. In such circumstances, the proceeds **may be** property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution. *In re Allied Digital Technologies Corp.*, 306 B.R. at 512. See also *In re Sacred Heart Hospital of Norristown*, 182 B.R. 413, 419-420 (Bankr. E.D. Pa. 1995).

9. Having noted that distinction, the Court believes the depletion of proceeds to pay the Costs of Defense does not diminish the protection afforded the estate's assets under the terms of the Policy. The Policy's "Priority of Payments Endorsement" specifically requires that the proceeds be used <u>first</u> to pay non-indemnifiable loss for which coverage is provided under Coverage A of this Policy, which coverage includes the Costs of Defense. Then, only after such payments are made, and only if proceeds remain after payment of such Costs of Defense, will the Trustee or the estate be paid any proceeds. Thus, under the language of the Policy itself, the estate has only a contingent, residual interest in the Policy's proceeds; and,

payment of the proceeds in accordance with the "Priority of Payments Endorsement" does not diminish the protection the Policy affords the estate, as such protection is only available after the Costs of Defense are paid.

The Trustee's efforts to protect sufficient insurance proceeds to satisfy a large judgment against the former officers and directors or to protect the estate from potential liability is consistent with the duties of the Trustee and the general policy in favor of maximizing the value of the bankruptcy estate. *See CHS Electronics, Inc.*, 261 B.R. 538, 544 (Bankr. S.D. Fla. 2002). However, the Code provides the Trustee no different status than a non-bankruptcy plaintiff with an unliquidated claim which may be covered by insurance proceeds. *Id.* Accordingly, the insurance proceeds payable under the Policy are not considered to be property of the estate subject to a stay.

**B.    Even if Carolina's Policy is Estate Property,
       <u>Cause Exists to Grant Relief from the Stay</u>**

10. To the limited extent that the proceeds of the Policy necessary to satisfy the Trustee's claims could be considered property of the estate, and to the extent the automatic stay would apply under such circumstances, the Court can and will grant stay relief for cause under 11 U.S.C. Section 362(d)(1). Courts conduct a case-by-case inquiry and apply a totality of the circumstances test to determine whether cause for relief from the stay exists. *In re Alosi*, 261 BR. 504, 508 (Bankr. M.D. Fla. 2001). The decision to lift the stay is within the discretion of the Bankruptcy Court Judge. *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989).

11. In the present case, "cause" exists for granting relief from the stay to permit Carolina to advance the Defense Costs to Laminate's Directors and Officers under the Policy.

As stated by the New York Bankruptcy Court: "D&O policies are obtained for the protection of individual directors and officers.... in essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection." *In re First Central Financial Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999).

12. Because of the separate and distinct interests between the directors and officers and the debtor, numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers -- even though the insurance policies also provided direct coverage to debtor. In *In re World Health Alternatives, Inc.*, 369 B.R. 805 (Bankr. Del. 2007) – like here – a Chapter 7 trustee sought to thwart the payment by a D&O insurer to settle a lawsuit against the debtor's directors and officers, because the trustee argued the proceeds of a D&O policy (that also insured the debtor directly) were an "asset of the estate." Disagreeing with the trustee, the Delaware bankruptcy Court held:[1]

> *[T]he proceeds of the Debtor's insurance policy are not property of the estate.* The Court arrives at this conclusion from its review of the "language and scope of the [P]olicy at issue." *Allied Digital*, 306 B.R. at 509. The Policy proceeds which are being used to fund the Settlement and are being held in escrow by Lead Counsel are from the Policy's Coverage A. World Health, and now the Trustee as successor, has no right to any Coverage A proceeds, which insures only World Health's officers and directors. World Health must look to Coverage B which insures it for indemnification claims. There are no such claims against World Health. If the Trustee is seeking to recover for the wrongs of the defendants in the Trustee's Action pending in this Court, it is not entitled to preference over the settlement of the Consolidated Action. As the Court held in *Allied Digital*:

---

[1] Like here, the policy at issue in *World Health* also contained: "a 'Priority of Payments' endorsement (Endorsement No. 11) that specifically provides for payment of damages and defense costs to the directors and officers under Coverage A before any payment is made to World Health under Coverages B and/or C." *Id.* at 808.

> The Trustee's real concern is that payment of defense costs may affect his rights as a plaintiff seeking to recover from The D&O Policy rather than as a potential defendant seeking to be protected by the D&O Policy. In this way, Trustee is no different than any third party plaintiff suing defendants covered by a wasting Policy.

*Id.* at 811. (Emphasis added.) *See also, In re Adelphia Communications Corp.*, 285 B.R. at 598 (granting relief from stay in order to permit primary insurer to advance defense costs); *In re Boston Reg'l Med. Ctr., Inc.*, 285 B.R. 87 (Bankr. D. Mass. 2002) (granting relief from stay in order to permit use of the D&O policy proceeds for payment of defense costs); *In re CHS Electronics, Inc.*, 261 B.R. at 544 (court held that proceeds of D&O policy ear-marked to fund a securities class settlement were not estate property, and alternatively found cause to lift the stay to allow payments under the policy); *In re Enron Corp.*, 2002 Bankr. LEXIS 544 (Bankr. S.D.N.Y. 2002) (granting relief from stay, to the extent applicable, for payment of defense costs); *In re CyberMedica, Inc.*, 280 B.R. 12, 18-19 (Bankr. Mass. 2002) (granting relief from stay for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under D&O policy). Indeed, the Bankruptcy Court of New York cautioned that "bankruptcy courts should be wary of impairing the contractual rights of directors and officers even in cases where the policies provide entity coverage." *In re Adelphia Communications Corp.*, 285 B.R. at 598.

13. Notwithstanding the allowance of the payment of the Costs of Defense under the Policy, the Court conditions the granting of stay relief to pay such costs upon Court approval, after notice and hearing. *E.g., Eastern Refra. Co. Inc. v. Forty Eight Insul. Inc.*, 157 F.3d 169, 172 (2d Cir.1998); *In re Lopez-Soto*, 764 F.2d 23, 28 (1st Cir.1985); *Browning v. Navarro*, 743 F.2d 1069, 1074 and 1084 (5th Cir.1984); *In re Chari*, 262 B.R. 734, 736 (Bankr. S.D.Ohio

2001). Each and every applicant seeking payment for Costs of Defense, as defined in the Policy, shall submit monthly fee applications for Court approval. Federal Rule of Bankruptcy Procedure 2016 provides that:

> any entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.... The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity....

Fed. R. Bankr.P. 2016(a). Therefore, in granting the motion for stay relief, the Court conditions the payment of attorney's fees upon approval by the Court upon the filing of an application for compensation or reimbursement as provided by Federal Rule of Bankruptcy Procedure 2016. *See In re Arter & Hadden, L.L.P*, 35 B.R. 666 (Bankr. N.D. Ohio, 2005).

WHEREFORE, it is

ORDERED AND ADJUDGED that Carolina's Policy is not property of the Laminate Kingdom bankruptcy estate and, therefore, the automatic stay imposed by 11 U.S.C. § 362(a) is not applicable to Carolina's Policy; alternatively, it is

ORDERED AND ADJUDGED that to the extent applicable, the automatic stay imposed by 11 U.S.C. § 362(a) is lifted so as to permit Carolina to reimburse the reasonable and necessary Costs of Defense incurred by the Directors and Officers since the commencement of this bankruptcy case in connection with the Laminate Claims, after notice and hearing upon application to this Court in accordance with the Local Rules and guidelines.

### #

In Re: LAMINATE KINGDOM, LLC

1  Copies furnished by:

2  WILSON, ELSER, MOSKOWITZ,
       EDELMAN & DICKER LLP
3  BRIAN MCKELL
4  Florida Bar No. 975753
   3800 Bank of America Tower
5  100 Southeast Second Street
   Miami, Florida 33131
6  (305) 374-4400 Telephone
7  (305) 579-0261 Facsimile
   Brian.mckell@wilsonelser.com
8
   and
9
   WILSON, ELSER, MOSKOWITZ,
10      EDELMAN & DICKER LLP
11 JAMES K. THURSTON
   120 North LaSalle Street, Suite 2600
12 Chicago, Illinois 60602
   (312) 704-0550 Telephone
13 (312) 704-1522 Facsimile
   James.thurston@wilsonelser.com
14

15 Brian M. McKell, Esq.
   Brian M. McKell, Esq. is directed to mail a conformed copy of this Order on all interested parties and shall file a certificate of service with the Clerk of the Court.
16

17

...

27                         Page 10
                ORDER PERMITTING CAROLINA TO PAY
28           "COSTS OF DEFENSE" UNDER ITS POLICY

262797.1